IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-30581
_____


DAVID HERWIG; ROBERT KOPROWSKI;
DIANE VIETRI,

Plaintiffs-Appellants,

versus

MARINE SHALE PROCESSORS INC.;
MARINE SHALE PROCESSORS TECHNICAL
SERVICE, INC.,

Defendants-Third Party
Plaintiffs-Appellees.


_____

Appeal from the United States District Court for the
Eastern District of Louisiana
(92-CV-2753-C)
_____

August 7, 1996
Before GARWOOD, HIGGINBOTHAM and BENAVIDES, Circuit Judges.[*]

PER CURIAM:

Plaintiffs-appellants (plaintiffs) filed this suit against

defendants-appellees (defendants), Marine Shale Processors, Inc.

(MSP) and Marine Shale Processors Technical Services, Inc. (MSPTS),

alleging that the defendants, plaintiffs' former employers,

breached certain contracts of employment with the plaintiffs. The

_____

[*] Pursuant to Local Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

jury returned a verdict in favor of the plaintiffs, but the magistrate judge, before whom the case was tried by consent of the parties, granted judgment for defendants as a matter of law and dismissed the plaintiffs' claims. The sole issue advanced by either side on this appeal is whether there was sufficient evidence adduced at trial to support the jury's verdict on liability. We reverse the judgment for defendants and remand with direction to enter judgment consistent with the jury's verdict.

## Facts and Proceedings Below

MSP is a family-owned corporation that reprocesses and recycles industrial waste. In March of 1990, MSP hired Gordon McDonald (McDonald) for a term of three years as Vice President of Sales and Marketing.[1] In order that McDonald might perform his contractual duties, the President of MSP, Jack Kent, Sr., created MSPTS, a separate company established to handle the sales function of MSP under an agency agreement between the two companies.

Accordingly, in early to mid-1990, McDonald approached the three plaintiffs based on the recommendations of a headhunting firm. Plaintiffs contend that, at the time they were so approached, they had serious reservations about going to work for

---

[1] McDonald, whose terms of employment were documented in a seven page written contract, possessed the following "Duties":

"Vice-President of Sales agrees to direct all sales activities on behalf of principal, including but not limited to the hiring, training, supervision and firing of sales personnel." (footnote omitted).

2

MSPTS because of the controversial reputations of MSP and Jack Kent. McDonald testified that he was aware of these reservations, and that he attempted to make his offers of employment attractive despite these controversial reputations. Ultimately, the plaintiffs did accept offers of employment at different times between May and June of 1990.

At the time of their respective decisions to accept MSPTS's offers of employment, the plaintiffs each received a letter and "offer summary" from McDonald confirming the oral offers of employment. These "offer summaries" included information regarding the employees' respective start dates, salaries, and, in the cases of plaintiffs David Herwig (Herwig) and Robert Koprowski (Koprowski), car allowances, bonus incentives, and medical benefits.[2] Vietri and Koprowski signed these "offer summaries" and returned them to McDonald. The letters containing these summaries stated that, "It is agreed, however, that neither this offer of employment, its acceptance, nor the summary of benefits attached

---

[2]    All three plaintiffs were questioned regarding these "offer summaries" at trial. Diane Vietri (Vietri) testified that the "offer summary" she received was erroneous in numerous respects; the summary omitted the fact that McDonald and Vietri had agreed to employment for a specific term, and the start date and salary set forward in the summary were both wrong. Vietri testified that she telephoned McDonald when she received her "offer summary" to inform him of these errors. Additionally, the summary of Vietri's offer mentioned a pre-employment physical, which never took place. Koprowski also testified that his "offer summary," which apparently contained errors as well, did not concern him because he viewed the summary as an "administrative document" that had no bearing on McDonald's commitment that Koprowski's contract was for three years.

3

create a contract of employment."  Herwig did not sign his "offer summary" letter, but instead responded with a letter of his own.[3]  McDonald testified that the purpose of these form "offer summary" letters was to get the plaintiffs into the payroll system.

At a sales meeting in November of 1990, Jack Kent expressed his dissatisfaction with MSPTS's overall performance and intimated that all of the MSPTS employees would be fired unless their job performance improved.  McDonald thereafter met with the plaintiffs and, in an effort to alleviate the group's anxiety, began drafting written employment contracts modeled after his own contract with MSP.

Then, on December 27, 1990, Kent informed the plaintiffs that, effective January 1, 1991, MSP and MSPTS would mutually terminate the existing agency agreement and that MSPTS employees would be interviewed for integration into MSP.

On January 3, 1991, McDonald presented written employment contracts from MSPTS to the three plaintiffs.  Evidence was introduced at trial indicating that these contracts, which were backdated to December 1, 1990, were intended to memorialize the understandings reached between McDonald and the plaintiffs during

---

[3]    Herwig maintains that, in his letter, he put in writing some of the terms of employment that he wanted.  Defendants argue that Herwig's letter constituted an acceptance of MSPTS's offer with clarifications concerning his relocation expenses and his incentive and revenue plans.  Herwig's acceptance letter, which MSP signed, stated: "It is agreed that neither your May 31, 1990 offer letter or this acceptance letter create a contract of employment."

their pre-employment negotiations. Accordingly, the contracts indicated that the plaintiffs had been hired for a fixed term. They also contained guaranteed bonuses, sick leave provisions, and buy-out clauses providing for stipulated damages should the plaintiffs be terminated during their respective terms of employment. Defendants maintain that these latter terms were never discussed during the pre-employment negotiations.

Subsequent to Kent's dissolution of MSPTS, the plaintiffs were hired by MSP. Vietri confirmed (by letter of January 10, 1991) that she was working for MSP without change or modification of certain terms of her former employment with MSPTS, including her salary, incentive program, health benefits, life insurance, and disability benefits. Defendants observe that Vietri's letter of January 10 made no mention of the duration of her contract. And, in a letter Vietri wrote to Kent on January 16, 1991, the day of her termination from MSP, Vietri demanded her final paycheck and compensation for vacation time and an outstanding expense report. Defendants note that Vietri did not, however, mention the $150,000 buy-out clause set forward in the written employment contract she received from McDonald, nor did she argue that her contract was for a fixed term.

Herwig also acknowledged (by letter of January 10, 1991) that his employment with MSPTS had been terminated on December 31, 1990, and that his subsequent employment with MSP would "carr[y] . . . without change or modification" his (MSPTS) salary, incentive

program, health benefits, car allowance and insurance, disability benefits, and life insurance.  In this signed letter, Herwig made no mention of the fixed term of employment documented in his written contract.  Additionally, in a demand letter sent to Kent on January 16, 1991, Herwig likewise failed to make any reference to his $200,000 buy-out clause or the fixed term nature of his contract.[4]

On January 16, 1991, plaintiffs Herwig and Vietri were fired. Then, on April 5, 1991, Koprowski was terminated, as well.

The plaintiffs filed suit against MSP and MSPTS alleging breach of the written contracts (dated December 1, 1990) and, alternatively, breach of the initial oral contracts of employment. The jury found that each of the plaintiffs had been employed for a specific term.[5]  The only issue addressed by either party on this appeal is whether the evidence sufficiently supports this finding as to each plaintiff respectively to preclude judgment as a matter of law thereon in favor of defendants.

Defendants, who had moved for judgment as a matter of law at the close of plaintiffs' case and again following the presentation

---

[4]    Defendants also note that Koprowski failed to complain——upon receipt of his "offer summary"——that this summary made no mention of the alleged fixed term aspect of his employment contract, and that the summary detailed a "new" bonus plan.

[5]    Specifically, the jury responded "Yes" to interrogatories (one for each plaintiff) which read, "Do you find from a preponderance of the evidence that an oral contract of employment for a fixed term existed between plaintiff [] and defendant, MSPTS?"

6

of all evidence, reurged their motion pursuant to Fed. R. Civ. P. 50(b) following the verdict. The defendants also moved, alternatively, for a new trial. On May 31, 1995, the magistrate judge granted the defendants' motion for judgment as a matter of law.[6] The court accordingly entered judgment in favor of MSP and MSPTS, dismissing plaintiffs' claims. Plaintiffs appeal.

## Discussion

In *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 513 (5th Cir.), *cert. denied*, 115 S.Ct. 573 (1994), this Court held that, "Judgment as a matter of law is proper only if, under the governing law, there can be but one reasonable conclusion as to the verdict." Furthermore, in light of the deference duly afforded to jury verdicts, a court should enter judgment consistent with the verdict so long as there exists "substantial evidence" in support of the verdict. *Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969)(en banc). This Court has defined "substantial evidence" as "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach

---

[6]     In her Order and Reasons, the magistrate judge held that:

"Considering the overall testimony, the court cannot concur with the jury verdict that there was a contract of employment with any of these plaintiffs . . . The issue is whether an unequivocal agreement for term employment was made between the parties. It was not. Clearly, plaintiffs had an expectation and hope of remaining as long as McDonald, their mentor, was employed. But he had a term contract. They did not and their testimony and subsequent actions reflect that."

7

different conclusions." *Id*. When any such "substantial evidence" exists, judgment as a matter of law contrary to the verdict may not be entered. *Id.* Finally, in determining whether or not the district court properly granted the defendants' motion for judgment as a matter of law:

> "[T]he Court should consider all of the evidence——not just that evidence which supports the non-mover's case——but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party, that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper." *Id.* at 374.

The relevant substantive law is that of Louisiana. At trial, the plaintiffs had the burden of proving the existence of their respective oral contracts, and that these oral contracts were for fixed terms of employment. In *Kushindana v. Antioch Pub. Co.*, 755 F.Supp. 142, 144 (M.D.La. 1991), the court noted the requirements set forward in Louisiana Civil Code Article 1846 regarding proof of oral contracts: If the price or value of an oral contract is in excess of five hundred dollars, the contract must be proved by "at least one creditable witness and other corroborating circumstances." *See* La. Civ. Code Ann. art. 1846 ("If the price or value [of an oral contract) is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances"). An employee's attestation to the existence of his or her oral employment contract can satisfy the

8

requirement of testimony "by at least one witness." *See Lanier v. Alenco*, 459 F.2d 689, 691-92 (5th Cir. 1972). And, with regard to the second requirement of "other corroborating circumstances," only general corroboration is required. *See Samuels v. Firestone Tire & Rubber Co.*, 342 So.2d 661, 662 (La. 1977).

Plaintiffs all testified at trial that they were offered and had accepted oral contracts for fixed terms.[7] Herwig testified that the "meeting of the minds" between McDonald and himself materialized during an interview between the two in which McDonald framed the contract being offered to Herwig in terms of McDonald's own contract:

> "[McDonald] said 'we all have a three-year commitment and we have, you and I, we have a three-year commitment to make this program work.' I left that meeting feeling that if we decided to move forward and if I decided to go there, that we had a three-year commitment to improve the corporate image of that company."[8]

---

[7] Plaintiffs note in their brief to this Court that the fixed term aspect of their respective contracts has been referred to collectively as "a three year term" because McDonald's contract with MSP was for a three year term; McDonald and the plaintiffs testified that the plaintiffs were employed for fixed terms based on McDonald's contract for (a fixed term of) three years. The plaintiffs recognize that, since McDonald had already served some portion of his contract term before he hired——at different times——the respective plaintiffs, they did not have full three-year employment contracts. Nevertheless, plaintiffs contend that their contracts were to run from the dates on which they were respectively employed until the date on which McDonald's contract expired——fixed terms in each case.

[8] Defendants maintain that this testimony by Herwig was inconsistent with the following testimony:

"Q: All right. You had a commitment from Mr. McDonald.

Similarly, Vietri testified that, during her interview with McDonald:

"[McDonald] told me that he had three years to put this group together, three years to change the image of this company, and we would be in position for three years. He made a promise to me."

Finally, Koprowski testified that:

"[McDonald] said he was there to do the job. We talked about an 18 to 24 month scenario and at this time, I think [McDonald] was well into—because this was, you know, I think June-July. I had mentioned those terms of around 24 months and of course, that was referencing what I thought would be a good time period relative to my situation, but it was always referred back to the time period he had established to accomplish his mission, so I guess that would be roughly the same period of three years that he was under contract with the company.

Q: Under [McDonald's] contract?

A: Under [McDonald's] contract, yes."

In addition to such testimony from the plaintiffs—which at least minimally constitutes "[proof] by at least one

---

Was that a contract of employment in your mind with MSPTS or was that a commitment from Mr. McDonald?

A: It was a commitment from Mr. McDonald."

Plaintiffs respond to this by noting that the above testimony, quoted by the defendants in their brief to this Court, was taken out of context, as Herwig's testimony continued as follows:

"Q: Okay. Thank you.

MR. MASSEY: I don't think he was finished, Your Honor.

THE COURT: Are you finished?

THE WITNESS: But he was—I believed that he was acting on behalf of the company."

10

witness"——McDonald also testified that there was a "meeting of the minds" between the plaintiffs and himself that the plaintiffs were each offered, and each accepted, an oral contract to work for MSPTS for a fixed term.  This testimony satisfied the second requirement of La. Civ. Code Ann. art. 1846, that the plaintiff present evidence of "other corroborating circumstances."  Therefore, notwithstanding the defendants' arguments to the contrary,[9] we find that the plaintiffs adduced "substantial evidence" in support of the verdict.

Moreover, regarding this second requirement of La.Civ.Code Ann. art. 1846, the plaintiffs also presented testimony given by Robert Gilbert (Gilbert) and Richard Fuller (Fuller), and noted that McDonald gave to the plaintiffs——on January 3, 1991——written employment contracts from MSPTS that "memorialized" the understandings arising out of the pre-hiring negotiations between the plaintiffs and McDonald.

The situation of the parties can constitute "corroborating evidence" in this context.  *See Higgins v. Smith International,*

---

[9]     In their brief to this Court, the defendants cite testimony given by the plaintiffs which could be read as conflicting with their testimony regarding the fixed term character of the plaintiffs' contracts.  The defendants have failed to demonstrate, however, how these portions of testimony must have necessarily precluded the jury from placing any store in the testimony relied on by plaintiffs.  Accordingly, "[I]t is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses."  *Boeing Co. v. Shipman*, 411 F.2d 365, 375 (5th Cir. 1969) (en banc).

*Inc.*, 716 F.2d 278, 283 (5th Cir. 1983). Plaintiffs presented the testimony of Gilbert in support of their contention that MSP and Jack Kent were sufficiently notorious that McDonald and Gilbert, the "headhunter" who identified the plaintiffs as potential employees, had considerable difficulties persuading potential employees, including the plaintiffs, to accept employment offers. Gilbert testified that:

> "Well, apparently MSP was a controversial company. There were questions concerning some EPA actions against them. Mr. Kent, Sr. was known as being rather outgoing, outspoken. There were individuals that were concerned whether or not they were running the business ethically. There were other concerns whether or not they would not be put out of business by the EPA."

This testimony could be reasonably viewed as corroborating McDonald's assertion that he entered into oral contracts with the plaintiffs for fixed terms by demonstrating why the plaintiffs would have naturally sought assurances of job security, and why McDonald would have felt pressured to provide such assurances. Gilbert additionally testified that, in dealing with employment candidates pursuant to his headhunting duties, candidates asked him whether or not an employment contract (with MSP/MSPTS) was a possibility, and that Kent told him that, "If someone wants a contract, tell them it is negotiable."

Additionally, the plaintiffs offered the testimony of Fuller, who testified that, like the plaintiffs, he was hired by McDonald under an oral contract of employment for a fixed term: "And Mr.

12

McDonald agreed with you that you would have a term of employment of at least three years, didn't he?" Fuller answered: "Yes."

Finally, plaintiffs argue that the written contracts presented to them by McDonald——following a general threat by Kent that all of the employees of MSPTS were in jeopardy of losing their jobs——"memorialize" the plaintiffs' oral contracts for specific terms.[10]

While the defendants challenge the credibility and weight of this evidence, and the issue before us is arguably a close one, we ultimately conclude that defendants have failed to demonstrate that "the facts and inferences point so strongly and overwhelmingly" in the defendants' favor that we may properly determine that "reasonable men" could not have arrived at a contrary verdict. *See Boeing Co. v. Shipman*, 411 F.2d at 374. The plaintiffs' testimony was "of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment" (*Id*. at 374-75) could have concluded that this testimony satisfied the requirement of La. Civ. Code Ann. art. 1846 that the (fixed-term) oral contracts at issue be proven "by at least one witness." Furthermore, the testimony of McDonald, Gilbert, and Fuller, as well as the written contracts

---

[10] In a trial exhibit entitled "Memo to File" which McDonald placed with the company's copies of these written contracts, McDonald stated that the written contracts were intended to "memorialize" a December 1, 1990, meeting during which he agreed to "formalize" the conditions that were discussed during the pre-employment negotiations.

13

"memorializing" the employment terms discussed by the parties before the plaintiffs were hired, constituted "[proof by] other corroborating circumstances"——also required by La. Civ. Code Ann. art. 1846——that the plaintiffs were offered, and accepted, oral contracts for fixed terms.

## Conclusion

For the foregoing reasons, we reverse and remand to the district court with direction to enter judgment consistent with the jury's verdict.[11]

REVERSED and REMANDED

---

[11] On remand, the district court will need to address the plaintiffs' argument that they are entitled to prejudgment interest on the damage awards.